UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES - GENERAL

| Case No. | CV 21-00549 PA (ASx) | Date | April 30, 2021 |
|---|---|---|---|
| Title | Lasabra Ragsdale v. Wilshire Commercial Capital LLC | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE |
|---|---|

| K. Sali-Suleyman | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| None | None |

**Proceedings:**  IN CHAMBERS - COURT ORDER

Before the Court is a Motion to Compel Arbitration filed by defendant Wilshire Commercial Capital LLC ("Defendant"). (Dkt. No. 20.) Plaintiff Lasabra Ragsdale ("Plaintiff") filed an Opposition (Dkt. No. 21), and Defendant filed a Reply (Dkt. No. 22). Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds this matter appropriate for decision without oral argument.

**I.     Factual and Procedural Background**

Plaintiff filed a class action Complaint against Defendant on January 20, 2021 alleging violations of the Telephone Consumer Protection Act ("TCPA"). (Dkt. No. 1). Plaintiff filed an Amended Complaint on March 15, 2021. (Dkt. No. 18 ("FAC").) In her FAC, Plaintiff alleges that "beginning in February 2020, Defendant began placing calls using prerecorded messages to Plaintiff's cellular telephone." (Id. ¶ 21.) According to Plaintiff, "after being subjected to numerous calls, Plaintiff instructed Defendant to no longer contact them at Plaintiff's cell phone." (Id. ¶ 22.) "Despite this, Defendant continued to call [Plaintiff's cell phone] with prerecorded messages and using an [automatic telephone dialing system ('ATDS')]." (Id. ¶ 23.) Plaintiff brings two causes of action on behalf of the proposed class for: (1) violation of the TCPA 47 U.S.C. § 227(b), and (2) violation of 47 C.F.R. § 64.1200.

Defendant now seeks to compel Plaintiff to individually arbitrate her claims under the Federal Arbitration Act ("FAA"). Defendant argues the parties entered into an August 19, 2019 California Promissory Note and Security Agreement (the "Contract") which compels arbitration of Plaintiff's claims. In addition, Defendant argues the Contract prohibits Plaintiff from bringing any claims on a class wide basis.

The relevant parts of the Contract state:

> This Arbitration Agreement allows any party to choose to arbitrate any disputes between the parties. If the parties choose to arbitrat[e], the parties will have disputes decided by an arbitrator instead of in a court. In arbitration, the parties will not be able to have a jury trial. If a dispute is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-00549 PA (ASx) | Date | April 30, 2021 |
|---|---|---|---|
| Title | Lasabra Ragsdale v. Wilshire Commercial Capital LLC | | |

arbitrated, the parties give up any right to participate as a class representative or a member of a class.

2. **Dispute:** The term 'dispute' means and include[s] any action, dispute, claim or controversy of any kind arising out of, in connection with, or in any way related to the Agreement, financing, contracts, origination, servicing, collection, consumer reporting, or any other aspect whatsoever of a relationship or conduct of the Parties related to the transaction under this Agreement. . . .

8. **Class Action Waiver:** The Parties agree to give up any rights they may have to bring a class action lawsuit or class arbitration or to participate in either as a claimant. The Parties agree to give up any right to consolidate or join any arbitration proceeding with . . . . others. . . .

9. **Injunctive Relief:** The Parties agree that injunctive relief will not be an available remedy to arbitration. However, either party is permitted to seek injunctive relief in a court of competent jurisdiction. . . .

13. **Severability:** If any part of this Arbitration Agreement other than the class action waiver in paragraph 8 is found by a court or arbitrator to be unenforceable, the remainder shall be enforceable. If the class action waiver in paragraph 8 is found by a court or arbitrator to be unenforceable, the remainder of this Arbitration Agreement shall be unenforceable.

(Mot., Decl. of J. Schwartz, Ex. A.)

**II.    Legal Standard**

"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may petition the district court for an order compelling arbitration "in the manner provided for in such an agreement." 9 U.S.C. § 4. The Federal Arbitration Act ("FAA") provides that any arbitration agreement within its scope "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA reflects both a "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 333 (2011) (quotations and citations omitted). "Thus, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." Id. (citations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-00549 PA (ASx) | Date | April 30, 2021 |
|---|---|---|---|
| Title | Lasabra Ragsdale v. Wilshire Commercial Capital LLC | | |

    Under the FAA, a court's role is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does (2) whether the agreement encompasses the dispute at issue.  If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." Chiron Corp. v. Ortho Diagnostic Systems, Inc., 207 F.3d 1126, 1130 (9th Cir. 2000) (citations omitted).  To require arbitration, a claim's "factual allegations need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability." Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 721 (9th Cir. 1999) (citation omitted).  As a result, courts must "examine the factual allegations raised to determine which . . . causes of action are arbitrable." Id.  The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Id. (quotations and citations omitted).

**III.**    **Analysis**

    Here, Plaintiff concedes that the arbitration provisions in the Contract encompass her claims.  Plaintiff argues however that "the arbitration agreement is null and void under the . . . McGill Rule," and that "even if the agreement is not null and void, Plaintiff has sought statutory injunctive relief in this Court, which the agreement . . . does not allow the arbitrator to consider."  (Opp. at 2.)

    **1.**    **California's McGill Rule Does Not Apply to Plaintiff's Claims**

    Plaintiff first argues that the arbitration agreement is "null and void because it violates the McGill rule."  (Opp. at 2.)  In McGill, the California Supreme Court held that a contractual agreement purporting to waive a party's right to seek public injunctive relief in any forum is unenforceable under California law. Blair v. Rent-A-Center, Inc., 928 F.3d 819, 822 (9th Cir. 2019) (citing McGill v. CitiBank, N.A., 2 Cal. 5th 945 (2017)).  In McGill, the Court made a distinction between a claim for general injunctive relief, which the McGill rule does not encompass, and a claim for public injunctive relief.

    As stated in McGill, the purpose of public injunctive relief is "to remedy a public wrong, not to resolve a private dispute, and any benefit to the plaintiff requesting such relief would likely be incidental to the general public benefit of enjoining such a practice." 2 Cal. 5th at 961.  "Relief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff - or to a group of individuals similarly situated to the plaintiff - does not constitute public injunctive relief." Id. at 8955.  Thus, public injunctive relief must "by and large benefit[] the general public and . . . the plaintiff, if at all, only incidentally and/or as a member of the general public." Id.  "Merely declaring that a claim seeks a public injunction, however, is not sufficient to bring that claim within the bounds of the rule set forth in McGill." Blair v. Rent-A-Center, Inc., 17-cv-02335, 2017 WL 4805577, at *2 (N.D. Cal. Oct. 25, 2017); see also Johnson v. JP Morgan Chase Bank, 17-cv-2477, 2018 WL 4726042, at *6 (C.D. Cal. Sept. 18, 2018) ("Merely requesting relief which would generally enjoin a defendant from wrongdoing does not elevate requests for injunctive relief to requests for public injunctive relief.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-00549 PA (ASx) | Date | April 30, 2021 |
|---|---|---|---|
| Title | Lasabra Ragsdale v. Wilshire Commercial Capital LLC | | |

      For example, in <u>Wright v. Sirius XM Radio, Inc.</u>, the plaintiff sought an injunction to bar the defendant from certain conduct relating to a class of plaintiffs holding lifetime subscriptions to Sirius XM radio.  16-cv-01688, 2017 WL 4676580, at *9 (C.D. Cal. June 1, 2017).  Tacked onto this request, the plaintiff requested an order enjoining the defendant "from committing such unlawful, unfair, and fraudulent business practices" and from "making such material misrepresentations and failing to disclose or actively concealing its practice of regularly canceling and limiting or prohibiting transfers of lifetime subscriptions."  <u>Id.</u> .  The court determined that these requests were "vague, generalized allegations" and that they did not adequately request public injunctive relief.  <u>Id.</u>  The court further found that the benefit to the public of the requested relief was merely incidental. <u>Id.</u>  Therefore, the Court found the <u>McGill</u> rule did not apply to the plaintiff's claims.

      Similarly, in <u>Johnson</u>, the Court found that the plaintiff did not seek public injunctive relief despite "craft[ing] their allegations and prayer for relief to request public injunctive relief." 2018 WL 4726042, at *7.  The court found that, upon closer inspection, the plaintiff actually intended to seek redress for and prevent further injury to a group of plaintiffs that had already been injured by a bank's imposition of fees, not the general public.  <u>Id.</u>  The court determined that the requested injunctive relief provided "no real benefit to the public at large" because the class of people who stood to benefit from the relief was limited to those who had entered contractual agreements, and not the public at large.  <u>Id.</u>; see also <u>McGovern v. U.S. Bank N.A.</u>, 362 F. Supp. 3d 850, 859 (S.D. Cal. 2019) (finding that the plaintiff sought no public injunctive relief where it was "questionable whether the general public would receive any benefit from the injunction Plaintiff seeks, as the general public ha[d] not been subject to and w[ould] not be subject to any of the allegedly improper fees that constitute Plaintiff's injury.") Thus, the Court found the <u>McGill</u> rule did not apply to Plaintiff's claims.

      The Court finds this case similar to <u>Wright</u> and <u>Johnson</u>.  Plaintiff's FAC requests "[a]n injunction requiring Defendant to cease all unsolicited prerecorded or ATDS call activity, and to otherwise protect the interests of the Classes."  (FAC Prayer for Relief; <u>see also</u> FAC ¶ 70 ("Plaintiff and the Class are also entitled to an injunction against future calls.").)  Plaintiff is seeking injunctive relief on behalf of the proposed class, not injunctive relief that will benefit the public at large.  Plaintiff's claims arise out of a contractual relationship between Plaintiff and Defendant, and Plaintiff seeks to represent a class of similar individuals who entered into a contractual relationship with Defendant and then received unsolicited calls using an ATDS.  It is therefore questionable whether the general public would receive any benefit from the injunction Plaintiff seeks, as the general public has not entered into a contractual relationship with Defendant.  See <u>Sponheim v. Citybank, N.A.</u>, 19-cv-264, 2019 WL 2498938, at *5 (C.D. Cal. June 10, 2019) (finding plaintiff's complaint did not seek public injunctive relief where "upon examination of the Complaint, Sponheim's claims arise out of the contractual rights and obligations between Citibank and its customers, not deceptive advertising or marketing to the general public as in <u>McGill</u>.").

**B.**     <u>**The Court Will Hear Plaintiff's Individual Injunctive Relief Claim**</u>

      Next, Plaintiff argues that, should the Court determine that the <u>McGill</u> rule does not void the arbitration agreement, the Court should still determine the validity of Plaintiff's claim for injunctive

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-00549 PA (ASx) | Date | April 30, 2021 |
|---|---|---|---|
| Title | Lasabra Ragsdale v. Wilshire Commercial Capital LLC | | |

relief. (Opp. at 7.) Defendant argues that even if Plaintiff's injunction claim is severed, the class action waiver in the arbitration agreement remains in effect and the Court has to dismiss Plaintiff's class action claims.

As noted above, the Contract contains a provision allowing a claim for individual injunctive relief to proceed before a court. Per the terms of the Contract, "either party is permitted to seek injunctive relief in a court of competent jurisdiction." "This type of claim-splitting and remedy-splitting may be inefficient and unusual, but it's permitted so long as the parties have agreed to that course of action." Rogers v. Lyft, Inc., 452 F. Supp. 3d 904, 918 (N.D. Cal. Apr. 7, 2020). Thus, the Court finds Plaintiff's individual claim for injunctive relief can proceed before this Court.

Further, the Court finds that the class action waiver in Section 8 of the Contract applies to all of Plaintiff's claims, whether or not they are arbitrable. Thus, Plaintiff's class claims must be dismissed. (See Contract at ¶ 8 ("The Parties agree to give up any rights they may have to bring a class action lawsuit or class arbitration or to participate in either as a claimant.").) For example, in Rogers, the Court severed Plaintiff's injunctive relief claim, compelled arbitration of the plaintiffs' claims for individualized relief, and struck the class allegations because "the plaintiffs waived the right to represent a class in any forum." 452 F. Supp. 3d at 918. Thus, the Court agrees to hear Plaintiff's claim for injunctive relief on an individualized basis, and strikes Plaintiff's class allegation claims.

**Conclusion**

For the reasons stated above, the Court grants in part Defendant's Motion to Compel Arbitration. The Court strikes Plaintiff's class allegation claims. The parties are ordered to proceed to arbitration in accordance with the Contract as to Plaintiff's individual claim for monetary relief. In the exercise of its discretion, the Court dismisses all of Plaintiff's claims for monetary relief against Defendant without prejudice. See Brennan, 796 F.3d at 1133 (holding that district court did not err in dismissing Brennan's claims without prejudice and in favor of arbitration).

Plaintiff's remaining claim for injunctive relief remains before this Court. Although Plaintiff's claim for injunctive relief is not subject to the Contract, Plaintiff's injunctive relief claim largely depends on the viability of Plaintiff's claim for monetary relief which will be decided in arbitration. Thus, the Court stays this case pending the outcome of the parties' arbitration. The Clerk is ordered to administratively close this case. Finally, the Court orders that, within two weeks of the completion of arbitration, the parties shall file a Joint Status Report with the Court. If the arbitration is not completed by **September 1, 2021**, the parties shall file a Joint Status Report beginning on that date and continuing every four months until the arbitration is completed. Failure to file a required Joint Status Report may result in dismissal of this action without prejudice.

IT IS SO ORDERED.